**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| PLS IV, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>B&B Theatres Operating Company, Inc.,<br><br>    Defendant. | CIVIL ACTION NO. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff PLS IV, LLC ("PLSIV" or "Plaintiff"), by and through its undersigned counsel, complains and alleges as follows against B&B Theatres Operating Company, Inc., ("B&B Theatres" or "B&B").

### THE PARTIES

1. PLSIV is a Delaware Limited Liability Company, with its principal place of business located at 810 Seventh Ave., New York, New York 10019.

2. Upon information and belief, B&B Theatres is a corporation organized and existing under the laws of the State of Missouri with its principal place of business at 105 N Stewart Ct, Ste. 200, Liberty, MO 64068. Upon information and belief, B&B also maintains regular and established places of business at 3100 Highway 365, Port Arthur, TX 77642; and at 711 Woodbridge Parkway, Wylie, TX 75098.

### NATURE OF THE ACTION

3. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*.

4. B&B has infringed the following PLSIV patents: U.S. Patent No. 6,785,815; U.S. Patent No. 7,340,602; U.S. Patent No. 7,406,603; and U.S. Patent No. 7,694,342 (collectively, the

"Asserted Patents").  PLSIV is the legal owner by assignment of the Asserted Patents, which were duly and legally issued by the United States Patent and Trademark Office.  Plaintiff seeks monetary damages.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      Upon information and belief, this Court has personal jurisdiction over B&B in this action because B&B has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over B&B would not offend traditional notions of fair play and substantial justice.  B&B has committed acts of patent infringement and has regularly and systematically conducted and solicited business in this District by and through at least several theaters in this District.

7.      Venue is proper in this District under 28 U.S.C. § 1400(b) at least because B&B has committed acts of infringement in this District and has regular and established places of business in this District.  On information and belief, B&B operates movie theaters in this District, including the B&B Port Arthur Central Mall 10 located at 3100 Highway 365 Port Arthur, TX 77642; and the B&B Theatres Wylie 12 located at 711 Woodbridge Parkway, Wylie, TX 75098.

## FACTUAL BACKGROUND

### The Inventive Technology

8.      The patented technology stems from a series of innovations by Intertrust Technologies Corporation ("Intertrust"), a company that pioneered digital rights management and developed the architecture to create the trusted computing environment needed for commercially viable digital rights management ("DRM").  DRM enabled distribution of software, music, books, and video over the Internet, and provided for secure processing in a distributed environment.

9.      PLSIV acquired all rights in the Asserted Patents via assignment.

10.     The patented technology in the Asserted Patents protects high-value content—*e.g.*, original-release commercial motion pictures—when these content assets are distributed to exhibitors, such as commercial movie theaters.   The patented technology extends the basic concepts of digital rights management and secure distributed computing to enable the levels of security required by commercial distribution of digital content in which the major studios have typically invested tens of millions of dollars.  The incentives to breach the security of these high-value content assets, the increasing sophistication of hackers, and the potential cost-savings to the cinema industry from digital distribution made the patented technology important and valuable.

**The Asserted Patents**

11.     The Asserted Patents provide detailed teaching of a sophisticated security architecture that has been used for over a decade by the cinema industry to securely distribute, use, and audit the use of original-release movies and other high-value content in digital form.  The Asserted Patents provide the technology necessary for movie studios and other high-value content providers and industry participants to trust and verify that their movies and other high-value content are only used for authorized showings, the technology to efficiently and effectively protect that content from theft or misuse, and the technology to ensure that the security protecting that content is not breached.

12.     The claims of the Asserted Patents cannot be performed without a computer and are not directed toward fundamental economic practices, methods of organizing human activities, an idea itself, or mathematical formulas.  *See, e.g.*, *Intertrust Technologies Corporation v. Cinemark Holdings, Inc.*, Dkt. No. 375 at 79:3-19, Case No. 2:19-cv-266-JRG (Lead Case).

13.     The Asserted Patents describe and claim innovative methods of controlling the use of digital content, using a set of criteria, through non-abstract software modules and computer systems.  *See, e.g.*, *Intertrust Technologies Corporation v. Cinemark Holdings, Inc.*, Dkt. No. 375 at 79:3-19, Case No. 2:19-cv-266-JRG (Lead Case).

14.     The claims of the Asserted Patents recite more than generic computer functionality and recite steps that are not purely conventional.

15.     The claims of the Asserted Patents, either alone or as an ordered combination, are unconventional and unique, and are not well-known, routine, or conventional.

16.     The claims of the Asserted Patents recite improvements over prior art and conventional methods of control over the use of digital content and represent meaningful limitations and/or inventive concepts.  Further, in view of these specific improvements, the inventions of the claims of the Asserted Patents, when such claims are viewed as a whole and in ordered combination, are not routine, well-understood, conventional, generic, existing, commonly used, well-known, previously known, or typical.

**B&B's Infringing Instrumentalities**

17.     The inventive technology of the Asserted Patents was adopted by the cinema industry through specifications developed and promulgated by an organization named Digital Cinema Initiatives ("DCI").

18.     The original DCI specification was released in 2005, and the most recent version of the specification was approved for distribution on January 3, 2024 (Version 1.4.4).  *See, e.g.,* https://www.dcimovies.com/specification/.  Almost all feature films are now distributed digitally, using the DCI specification.

19.    B&B has infringed the Asserted Patents through its use of DCI-compliant Digital Cinema systems to show movies and other DCI-compliant content in the movie theaters that it owns and operates.  On information and belief, the DCI-compliant Digital Cinema systems used by B&B to infringe the Asserted Patents include but are not limited to systems comprising DCI-compliant products and associated equipment supplied by GDC Technology Limited ("GDC") and/or its subsidiaries.

20.    A DCI-compliant Digital Cinema system provides content protection and digital rights management for the content that is shown in B&B's movie theaters.

21.    Before showing a movie in a theater, a DCI-compliant Digital Cinema system at the theater receives contents of a Digital Cinema Package ("DCP") and a Key Delivery Message ("KDM").  The Digital Cinema System comprises a Media Block.

22.    The DCP typically comprises encrypted digital content contained in Track Files, and at least one Composition Play List ("CPL").  The digital content is the movie itself—the video, audio, or textual content in Track Files that makes up the movie that is seen and heard in the movie theater.  The CPL is the recipe for the movie in its contracted format—the CPL can combine the content in a large number of different audio, video, and textual Track Files for a particular screening in a particular market, including different combinations of audio in different languages, video with scene variations, and other variations.

23.    The KDM is a digitally signed secure container.  The KDM contains encrypted content keys associated with a CPL, usage parameters for the content keys that comprise temporal, content, and equipment rules for the use of the content keys, and a Trusted Device List ("TDL") and/or other identifier of equipment permitted to use the keys to play the content.

24.     The Media Block in the DCI-compliant Digital Cinema system typically comprises at least a Security Manager, a Media Decryptor, and a Forensic Marker.

25.     If the DCI-compliant Digital Cinema system comprises a projector connected via Link Encryption, the Media Block also includes a Link Encryptor.

26.     The Media Block comprises a Secure Processing Block that includes a private key for identification of the Media Block.  The Media Block checks the signature of the KDM, opens the KDM upon successful verification of the signature, and enforces certain governance conditions conveyed in the KDM and DCP, and, if a request to play a movie is within the scope of the governance, uses the Media Block private key to decrypt the content keys.

27.     If the governance conditions associated with each of the content keys are met, then the decrypted content keys are sent by the Security Manager of the Media Block to the Media Decryptor, where the keys will be used to decrypt the content.  The content may then be watermarked using the Forensic Marker.  If there is Link Encryption between the Media Block and the Projector, the Link Encryptor will then encrypt the content for decryption at the projector, where the content is projected onto the screen in the movie theater.

28.     B&B uses the technology of the Asserted Patents in its operation of movie theaters. The Asserted Patents provide the technology necessary for the movie studios or other content providers to trust that the movie theaters will only use the content for authorized showings and that the movie theaters will not breach the security of the digital copies that have been entrusted to them.

**FIRST CAUSE OF ACTION**
**Infringement of U.S. Patent No. 6,785,815**

29.     Plaintiff re-alleges and incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein.

30.     PLSIV is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 6,785,815 (the "'815 patent"), titled "Methods and systems for encoding and protecting data using digital signature and watermarking techniques," duly and legally issued by the United States Patent and Trademark Office on August 31, 2004, including the right to bring this suit for damages.  A true and correct copy of the '815 patent is attached hereto as Exhibit A.

31.     The '815 patent is valid and enforceable for acts of infringement before its expiration.

32.     B&B has directly infringed the '815 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods performed by and/or attributable to equipment, and or services that practice one or more claims of the '815 patent, including but not limited to DCI-compliant Digital Cinema systems, and components thereof, and providing services such as showing movies using DCI-compliant Digital Cinema systems.

33.     As a non-limiting example, B&B has infringed claim 42 of the '815 patent. Claim 42 claims as follows:

A method for managing at least one use of a file of electronic data, the method including:

receiving a request to use the file in a predefined manner;

retrieving at least one digital signature and at least one check value associated with the file;

verifying the authenticity of the at least one check value using the digital signature;

verifying the authenticity of at least a portion of the file using the at least one check value; and

granting the request to use the file in the predefined manner.

34.     B&B has infringed at least claim 42 of the '815 patent through its use of DCI-compliant Digital Cinema systems to show DCI-compliant content (and, as part of that, perform actions such as validating Composition Playlists and processing essence integrity pack data).  For example, in order to show DCI-compliant content in such systems, an SMS or TMS receives a request from the theater operator to start a feature film or other content.  A Media Block's Security Manager subsequently receives a request to perform playback.  The Security Manager receives a digitally signed CPL that includes hashes of the Track Files and a digitally signed KDM that includes information for validating Hash-based Message Authentication Codes ("HMAC") associated with the Track File contents.  The Security Manager verifies the digital signature of the CPL and the KDM.  The hashes and HMACs associated with the Track File content are used to verify the authenticity of at least a portion of the Track File.

35.     B&B has had actual knowledge of both the '815 patent and details of B&B's infringement of the '815 patent since before the filing date of this Complaint and before the '815 patent expired, including because Intertrust sent a letter to B&B in April 2018 providing notice of infringement of the '815 patent.

36.     B&B is not and has never been licensed or otherwise authorized by PLSIV or prior assignees of the Asserted Patents to practice the claims of the '815 patent.

37.     By reason of B&B's infringing activities, PLSIV has suffered substantial damages in an amount to be proven at trial, but in no event less than a reasonable royalty.

38.     B&B's infringement of the '815 patent has been willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

## SECOND CAUSE OF ACTION
### Infringement of U.S. Patent No. 7,340,602

39.    Plaintiff re-alleges and incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein.

40.    PLSIV is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 7,340,602 ("the '602 patent"), titled "Systems and methods for authenticating and protecting the integrity of data streams and other data," duly and legally issued by the United States Patent and Trademark Office on March 4, 2008, including the right to bring this suit for damages.  A true and correct copy of the '602 patent is attached hereto as Exhibit B.

41.    The '602 patent is valid and enforceable for acts of infringement before its expiration.

42.    B&B has directly infringed the '602 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods performed by and/or attributable to equipment, and or services that practice one or more claims of the '602 patent, including but not limited to DCI-compliant Digital Cinema systems, and components thereof, and providing services such as showing movies using DCI-compliant Digital Cinema systems.

43.    As a non-limiting example, B&B has infringed claim 25 of the '602 patent. Claim 25 claims as follows:

A method for encoding a block of data in a manner designed to facilitate fault-tolerant authentication comprising:

generating a progression of check values, each check value in the progression being derived from a portion of the block of data and from at least one other check value in the progression;

generating an encoded block of data, comprising:

inserting error-check values into the block of data, each error-check value being inserted in proximity to a portion of the block of data to which it corresponds, and each error-check value being operable to facilitate authentication of a portion of the block of data and of a check value in the progression of check values;

transmitting the encoded block of data and the check values to a user's system, whereby the user's system is able to receive and authenticate portions of the encoded block of data before the entire encoded block of data is received,

wherein each error-check value comprises a hash of the portion of the block of data to which it corresponds.

44.    B&B has infringed at least claim 25 of the '602 patent through its use of DCI-compliant Digital Cinema systems to show DCI-compliant content (and, as part of that, perform actions such as generating log records and reports of associated activity).  For example, when showing DCI-compliant using such systems, log records are generated for the use of participants in the digital content distribution vertical channel.  Each log record includes a check value.  In generating a series of log records, the DCI-compliant equipment generates a series of said check values.  The record header comprises a hash of the record body and a hash of the previous record header.  Each log record also includes a hash of the log record body, which is an error-check value. The record header comprises a hash of the record body and a hash of the previous record header. The hash of the record header is derived from a portion of the block of data, and also from the hash of the prior record header, the prior record header being one other check value in the progression.

45. B&B has had actual knowledge of both the '602 patent and details of B&B's infringement of the '602 patent since before the filing date of this Complaint and before the '602 patent expired, including because Intertrust sent a letter to B&B in April 2018 providing notice of infringement of the '602 patent.

46. B&B is not and has never been licensed or otherwise authorized by PLSIV or prior assignees of the Asserted Patents to practice the claims of the '602 patent.

47. By reason of B&B's infringing activities, PLSIV has suffered substantial damages in an amount to be proven at trial, but in no event less than a reasonable royalty.

48. B&B's infringement of the '602 patent has been willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

**THIRD CAUSE OF ACTION**
**Infringement of U.S. Patent No. 7,406,603**

49. Plaintiff re-alleges and incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein.

50. PLSIV is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 7,406,603 (the "'603 patent"), titled "Data protection systems and methods," duly and legally issued by the United States Patent and Trademark Office on July 29, 2008, including the right to bring this suit for damages. A true and correct copy of the '603 patent is attached hereto as Exhibit C.

51. The '603 patent is valid and enforceable for acts of infringement before its expiration.

52. B&B has directly infringed the '603 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods performed by and/or attributable to equipment, and or services that practice one or more claims of the '603

patent, including but not limited to DCI-compliant Digital Cinema systems, and components thereof, and providing services such as showing movies using DCI-compliant Digital Cinema systems.

53.    As a non-limiting example, B&B has infringed claim 1 of the '603 patent.  Claim 1 claims as follows:

A method for protecting electronic media content from unauthorized use by a user of a computer system, the method including:

receiving a request from a user of the computer system to use a piece of electronic media content;

identifying one or more software modules responsible for processing the piece of electronic media content and enabling use of the piece of electronic media content by the user;

processing at least a portion of said piece of electronic media content using at least one of the one or more software modules;

evaluating whether the at least one of the one or more software modules process the portion of the electronic media content in an authorized manner, the evaluating including at least one action selected from the group consisting of:

evaluating whether the at least one of the one or more software modules make calls to certain system interfaces;

evaluating whether the at least one of the one or more software modules direct data to certain channels;

analyzing dynamic timing characteristics of the at least one of the one or
more software modules for anomalous timing characteristics
indicative of invalid or malicious activity;

denying the request to use the piece of electronic media content if the evaluation
indicates that the at least one of the one or more software modules fail to
satisfy a set of predefined criteria.

54.    B&B has infringed at least claim 1 of the '603 patent through its use of DCI-
compliant Digital Cinema systems to show DCI-compliant content (and, as part of that, perform
actions such as monitoring to protect against access to the content by untrusted/compromised
equipment).  For example, in order to show DCI-compliant content in such systems, an SMS or
TMS receives a request from the theater operator to start a feature film or other content.  A Media
Block's Security Manager subsequently receives a request to perform playback, identifies all
applicable security entities, and verifies that there is a corresponding digital certificate attesting to
their validity and function.  During the playback process, the Security Manager will evaluate
whether the processing of the digital content is directed to trusted channels.  If the Security
Manager evaluation determines that one or more modules are configured to direct content to a
channel that cannot be trusted, the Security Manager will terminate playback of the content.

55.    B&B has had actual knowledge of both the '603 patent and details of B&B's
infringement of the '603 patent since before the filing date of this Complaint and before the '603
patent expired, including because Intertrust sent a letter to B&B in April 2018 providing notice of
infringement of the '603 patent.

56.    B&B is not and has never been licensed or otherwise authorized by PLSIV or prior
assignees of the Asserted Patents to practice the claims of the '603 patent.

57.    By reason of B&B's infringing activities, PLSIV has suffered substantial damages in an amount to be proven at trial, but in no event less than a reasonable royalty.

58.    B&B's infringement of the '603 patent has been willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

### FOURTH CAUSE OF ACTION
**Infringement of U.S. Patent No. 7,694,342**

59.    Plaintiff re-alleges and incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein.

60.    PLSIV is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 7,694,342 ("the '342 patent"), titled "Systems and methods for managing and protecting electronic content and applications," duly and legally issued by the United States Patent and Trademark Office on April 6, 2010, including the right to bring this suit for damages. A true and correct copy of the '342 patent is attached hereto as Exhibit D.

61.    The '342 patent is valid and enforceable for acts of infringement before its expiration.

62.    B&B has directly infringed the '342 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods performed by and/or attributable to equipment, and or services that practice one or more claims of the '342 patent, including but not limited to DCI-compliant Digital Cinema systems, and components thereof, and providing services such as showing movies using DCI-compliant Digital Cinema systems.

63.    As a non-limiting example, B&B has infringed claim 1 of the '342 patent.  Claim 1 claims as follows:

A method for managing the use of electronic content at a user's computing device, the method including:

      executing an application program on the user's computing device, the application program being capable of rendering electronic content, the application program having at least a first digital certificate associated therewith, the first digital certificate being generated by or on behalf of a first entity comprising an association of one or more content providers, the first digital certificate being associated with the application program if the application program meets certain predefined criteria set by the association, the predetermined criteria including that the application program will handle the electronic content with at least a predefined level of security;

      requesting the application program to render a piece of electronic content, the piece of electronic content having at least a second digital certificate associated therewith, the second digital certificate being generated by or on behalf of a second entity different from the first entity, and the piece of electronic content further having associated therewith at least one electronic rule, the at least one electronic rule including data specifying one or more conditions associated with rendering the piece of electronic content, the one or more conditions including a condition that the piece of electronic content may be rendered by an application program having the first digital certificate associated therewith;

      verifying, at the user's computing device, the association of the second digital certificate with the piece of electronic content;

> using a rights management program running on the user's computing device to
> examine the data included in the at least one electronic rule and to determine
> that the piece of electronic content may be rendered by an application
> program having the first digital certificate associated therewith;
>
> verifying the association of the first digital certificate with the application program
> using the rights management program; and
>
> rendering the piece of electronic content using the application program, wherein
> the piece of electronic content comprises an authorizing document, and the
> second entity associates the second digital certificate with the authorizing
> document if the authorizing document originated from a certified entity.

64.    B&B has infringed at least claim 1 of the '342 patent through its use of DCI-compliant Digital Cinema systems to show DCI-compliant content (and, as part of that, perform actions such as examining Key Delivery Message data and determining whether the content may be rendered by firmware/software with an associated Digital Cinema Certificate).  For example, in order to show DCI-compliant content in such systems, a TMS and/or SMS is used to initiate a request that an application program render movie content.  The KDM includes a condition that the application program is associated with a digital certificate generated by or on behalf of DCI attesting to the compliance of the DCI-compliant equipment comprising the application program with DCI specifications, which represents a determination that the equipment will handle digital movie content with at least a predefined level of security.  DCI comprises an association of major Hollywood Studios.  The KDM is a digital certificate associated with the content at least via a cryptographic binding and by explicit identification in a CPL.  The KDM is typically generated by or on behalf of a KDM authority, fulfillment entity, content owner, or content distributor.

65.    B&B has had actual knowledge of both the '342 patent and details of B&B's infringement of the '342 patent since before the filing date of this Complaint and before the '342 patent expired, including because Intertrust sent a letter to B&B in April 2018 providing notice of infringement of the '342 patent.

66.    B&B is not and has never been licensed or otherwise authorized by PLSIV or prior assignees of the Asserted Patents to practice the claims of the '342 patent.

67.    By reason of B&B's infringing activities, PLSIV has suffered substantial damages in an amount to be proven at trial, but in no event less than a reasonable royalty.

68.    B&B's infringement of the '342 patent has been willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

## PRAYER FOR RELIEF

WHEREFORE, PLSIV respectfully requests the following relief from this Court:

A.    A judgment that B&B has infringed each and every one of the Asserted Patents;

B.    Monetary damages resulting from B&B's infringement of the Asserted Patents, in an amount to be proven at trial, but in no event less than a reasonable royalty;

C.    Pre-judgment interest;

D.    Post-judgment interest;

E.    A judgment holding B&B's infringement of the Asserted Patents to be willful, and a trebling of damages pursuant to 35 U.S.C. § 284;

F.    A declaration that this Action is exceptional pursuant to 35 U.S.C. § 285, and an award to PLSIV of its attorneys' fees, costs and expenses incurred in connection with this Action; and

G.    Such other relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, PLSIV demands a trial by jury on all matters and issues triable by jury.

Dated: January 23, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*/s/ Tigran Guledjian by permission Claire Abernathy Henry*
Tigran Guledjian
California State Bar No. 207613
tigranguledjian@quinnemanuel.com
Christopher A. Mathews
California State Bar No. 144021
chrismathews@quinnemanuel.com
Scott L. Watson
California State Bar No. 219147
scottwatson@quinnemanuel.com
Razmig Messerian
California State Bar No. 260142
razmesserian@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Phone: (213) 443-3000
Fax: (213) 443-3100

Jordan B. Kaericher
State Bar No. 24132636
jordankaericher@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
3100 McKinnon St, Suite 1125
Dallas, TX 75201
Phone: (469) 902-3600
Fax: (469) 902-3610

Of Counsel:
Claire Abernathy Henry
State Bar No. 24053063
claire@millerfairhenry.com
Andrea L. Fair
State Bar No. 24078488
andrea@millerfairhenry.com

**MILLER, FAIR, HENRY, PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

*ATTORNEYS FOR PLAINTIFF*
*PLS IV, LLC*