# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| PLS IV, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:25-CV-00067-JRG |
| | § | (LEAD CASE) |
| B&B THEATRES OPERATING COMPANY, INC., | § | |
| | § | |
| *Defendant*. | § | |

| | | |
|---|---|---|
| PLS IV, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:25-CV-00068-JRG |
| | § | (MEMBER CASE) |
| THE MARCUS CORPORATION and MARCUS THEATRES, LLC, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Stay (the "Motion") filed by Defendants B&B Theatres Operating Company, Inc. and Marcus Theatres, LLC (together, "Defendants").[1] (Dkt. No. 24.) After reviewing the Motion and related briefing, the Court finds that the Motion should be and hereby is **DENIED**.

---

[1] The Court notes as well that Defendant The Marcus Corporation ("Marcus Corp.") currently has a co-pending motion to dismiss (Dkt. No. 23) which is why it did not join in this Motion, and that Marcus Corp. expressed it was in favor of this Motion if Dkt. No. 23 is to be denied (*see* Dkt. No. 24 at n.1). As such, the Court refers to the movants as encompassing all "Defendants" in the above-captioned cases.

I. BACKGROUND

Plaintiff PLS IV, LLC ("Plaintiff") filed its complaint against Defendants on January 23, 2025. (Dkt. No. 1; Case No. 2:25-cv-00068, Dkt. No. 1.) Their separate cases were consolidated into the above-captioned case on April 7, 2025. (Dkt. No. 16.) Defendants filed the Motion on April 15, 2025. (Dkt. No. 24.)

In the Motion, Defendants move to stay the above-captioned case pending the resolution of *PLS IV, LLC V. GDC Technology Limited*, Case No. 2:24-cv-00466 (the "GDC Action"), a case Plaintiff filed against GDC Technology Limited ("GDC") in this same Court on June 21, 2024— seven months prior to filing against these Defendants.

II. ANALYSIS

Defendants support their request for a stay with three distinct bases: the first to file rule, the customer-suit exception, and the general stay factors. The first to file rule and the customer-suit exception are addressed together; thereafter the Court addresses the general stay factors.

A. The First to File Rule and the Customer-Suit Exception

Defendants assert that this case should be stayed pursuant to the first to file rule, given that they assert there is "substantial overlap" between the GDC Action and this case. (Dkt. No. 24 at 4-6.) They also argue that this case should be stayed pursuant to the customer-suit exception, because the GDC Action involves GDC, the "true defendant" of Plaintiff's suit against Defendants, such that the GDC Action "has the potential to resolve the major issues concerning the claims against [Defendants]." (*Id*. at 7 (internal quotations omitted).)

Plaintiff responds that neither the first to file rule nor the customer-suit exception applies in this case, because (1) the first to file rule is "limited to suits involving shared issues pending in *multiple* forums, not cases that are proceeding (and will remain) in the *same* forum;" and (2) the

2

customer-suit exception "favors a *later*-filed manufacture's suit." (Dkt. No. 34 at 12 (emphasis in original).)

The Court finds that Plaintiff is correct regarding the application of both rules. The first to file rule is a "doctrine of federal comity, intended to avoid conflicting decisions…when multiple lawsuits involving the same claims are filed *in different jurisdictions*." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012) (emphasis added). The customer-suit exception is generally applied "to stay an earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). This Motion concerns two cases filed in the *same court*, and where the *first-*filed case concerns the manufacturer.

The Court finds that neither the first to file rule nor the customer-suit exception apply under these facts. Accordingly, neither theory supports a stay. The Court next considers the general stay factors.[2]

### B. General Stay Factors

In considering a motion to stay, courts evaluate: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*, 2017 WL 365398, at *10 (internal quotations omitted).

---

[2] The Court also finds that Defendants' position combining the first to file rule and the customer-suit exception is nonsensical, as they weigh in opposite directions. Defendants assert that the GDC Action should proceed and this case be stayed because that case was filed first, and then puts forth an *exception* to that rule to support the *same* argument that this case should be stayed during the litigation of the GDC Action.

### a. Prejudice of a Stay

The first general stay factor considers whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party. *Glob. Equity Mgmt.*, 2017 WL 365398 at *3. Defendants assert that a stay does not prejudice Plaintiff because both cases are proceeding in EDTX (Plaintiff's chosen forum) and that GDC is the party with whom documents and information concerning the design and operation of the accused GDC equipment resides (so discovery in the GDC Action will come directly from the supplier, which is likely to yield better evidence). (Dkt. No. 24 at 12-13.) Defendants further assert that there is no tactical disadvantage to Plaintiff because the actions against Defendants were filed two years after the latest expiration date of the Asserted Patents, so there can be no continuing infringement in the meantime while this action is stayed. (*Id*. at 13.)

Plaintiff responds that a stay will cause undue prejudice because (1) the GDC Action will not resolve all of the issues in the current case, so Plaintiff may be forced to wait over two years for the GDC Action to fully conclude before litigating Plaintiff's separate claims against Defendants; (2) relevant discovery will not solely be obtained from GDC, "given [Defendants'] specific knowledge of their suppliers and infringing uses of equipment;" and (3) the prejudice to Plaintiff is exacerbated by the risk that during the stay the memories of crucial witnesses may fade and other evidence may be lost. (Dkt. No. 34 at 13-14.)

The Court finds that this factor weights against a stay of the current litigation. While both cases are indeed proceeding in Plaintiff's chosen forum, and some discovery from GDC will be relevant in the instant case, Plaintiff is correct (as discussed in more depth below) that there will likely be additional issues and discovery in this case which will not be explored in the GDC Action. Further, although the alleged infringement is not ongoing, staying this case for a material period

of time certainly runs the risk that witnesses and evidence may deteriorate or become unavailable, as Plaintiff fears.

### b. Issues to be Simplified

The second general stay factor considers whether a stay will simplify the issues in question and trial of the case. *Glob. Equity Mgmt.*, 2017 WL 365398 at *3.

Defendants put forth issues which are common to both cases in its analysis of whether there is "substantial overlap" between this case and the GDC Action. They first argue that this case will resolve validity issues, as they stipulate that if the Asserted Patents are not found invalid in the GDC Action and any claims of infringement against Defendants remain under such patents, then Defendants will not assert any invalidity defense in this case. (Dkt. No. 24 at 5.) Next, they say that claim construction issues will be fully resolved in the GDC Action, as they stipulate that they will abide by the final claim construction rulings in the GDC Action and will not raise any claim construction issues not raised and ruled on in the GDC Action. (*Id*.) Further, they assert that infringement based on the use of GDC DCI-compliant equipment and compliance with DCI specification will be resolved in the GDC Action, though they note in this stipulation that they "reserve the right to defend against claims of infringement of the Asserted Patents to the extent such defense is outside the scope of [Plaintiff's] allegations against GDC." (*Id*. at n.4.) Finally, they assert that because the Asserted Patents expired before the filing of both this case and the GDC Action, the damages issues in the present case will be simplified if stayed during the pendency of the GDC Action. (*Id*. at 5-6.)

Plaintiff responds that there is only "partial overlap" between the GDC Action and this case, and as such that a stay would not simplify the "key issues" in this case. (Dkt. No. 34 at 14.) First, Plaintiff argues that while the Asserted Patents are the same across the cases, the *accused*

5

*products* are different, since the GDC Action is limited to GDC DCI-compliant products while this case encompasses the use of "***any*** non-licensed DCI-compliant Digital Cinema systems, including those without GDC products." (*Id*. at 5 (emphasis in original) (internal quotations omitted).) Second, Plaintiff argues that Defendants are mistaken in contending that the infringement allegations are limited to GDC equipment, and that this case has different infringement contentions than the GDC Action. (*Id*. at 6, citing Dkt. No. 1 at 5, where the Complaint alleges "the DCI-compliant Digital Cinema systems used by B&B to infringe the Asserted Patents include but are not limited to systems comprising DCI-compliant products and associated equipment supplied by GDC Technology Limited ('GDC') and/or its subsidiaries.") On this point, Plaintiff points out that Defendants' stipulation regarding infringement "expressly leaves open the possibility of different or broader infringement allegations" since Defendants reserve the right to defend against claims of infringement that are outside the scope of Plaintiff's allegations against GDC. (Dkt. No. 34 at 7, citing Dkt. No. 24 at n.4.) Third, Plaintiff asserts that since its infringement allegations in this case are not limited to only equipment from GDC, Plaintiff's potential damages in this action are not subsumed by potential damages in the GDC Action. (Dkt. No. 34 at 8.) Finally, Plaintiff points out that while it is a party across these cases, the differing defendants between this case and the GDC Action weigh against staying the case. (*Id*.)

While Defendants are certainly right that some issues may be narrowed if this case were to be stayed for the duration of the GDC Action, the Court agrees with Plaintiff that insufficient narrowing would occur for this factor to weigh in favor of a stay. Since Plaintiff alleges infringement via non-GDC products, which are absent from the GDC action, infringement findings based on the use of GDC equipment may not apply to products from other suppliers that Defendant may have implemented. Additionally, Plaintiff's infringement contentions disclose certain

6

infringement theories that rely in part on the use of other DCI-compliant equipment, like projectors, that GDC does not make or supply. (Dkt. No. 36 at 2, citing Dkt. No. 36-1 at 1.) As such, the Court finds that this factor weights against staying this case.

### c. Stage of Litigation

The third general stay factor considers whether discovery is complete and whether a trial date has been set. *Glob. Equity Mgmt.*, 2017 WL 365398 at *3. At the time of the filing of the Motion, Defendants were filing their answers and a scheduling conference had recently been ordered. (Dkt. No. 24 at 13.) By the time briefing completed for the Motion, Plaintiff had served its infringement contentions and discovery was about to begin. (Dkt. No. 34 at 14.) At the time of this Order, the parties are preparing to begin claim construction and fact discovery is underway. (*See* Dkt. No. 43 at 5.) The case is "no longer in its infancy at the time of this order, [but] the parties have yet to conduct the Markman hearing and fact discovery does not close [for many months]." *Westport Fuel Sys.*, 2020 WL 6781978 at *3.

Although a case being in its advanced stages weighs heavily against granting a stay, "the opposite inference—that a suit in the early stages should weigh heavily in favor of a stay—is not true." *Sighting Sys. Instruments, LLC v. Prestige Law Enf't, Inc.*, 2006 WL 2642184, at *4. (N.D. Tex. Sept. 11, 2006). The Court finds that this factor does weigh in favor of a stay, but only slightly.

### d. Weighing the Factors

Ultimately, the Court finds that the first and second factors weigh against a stay, and that the third factor weighs slightly in favor of a stay. As such, the stay factors on the whole weigh against this Court granting the Motion.

### III.    CONCLUSION

For the reasons stated herein, the Court **DENIES** Defendants' Motion to Stay (Dkt. No. 24) as set forth above.

**So ORDERED and SIGNED this 20th day of November, 2025.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE